UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| O'NEIL J. DARDEN, JR. | : | CIVIL ACTION NO. 6:22-cv-0404 LEAD<br>6:22-cv-1398 MEMBER |
| VERSUS | : | JUDGE ROBERT R. SUMMERHAYS |
| ROBERT C. VINES, ET AL. | : | MAGISTRATE JUDGE KAY |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss filed by April Wyatt, Melissa Darden, John Paul Darden, Jacob Darden, Toby Darden, and Jacqueline Junca (collectively, "Tribal Council Defendants"). Doc. 18. The instant case was consolidated with another matter of the same name [6:22-cv-01398 (member)] in which a nearly identical Motion to Dismiss was filed by the Tribal Council Defendants. Doc. 16 (member). The substance of this Report and Recommendation applies to both motions to dismiss. The motions are opposed by plaintiff O'Neil J. Darden, Jr. Doc. 33 (lead).[1] Both motions have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the reasons stated, **IT IS RECOMMENDED** that the motions be **GRANTED IN PART.**

**I.**
**BACKGROUND**

This civil rights action arises out of alleged malicious prosecution and abuse of process that resulted in plaintiff being criminally charged with and prosecuted for felony theft, computer

---

[1] All subsequent instances of "doc." reference documents from the lead case.

-1-

fraud, and obstruction of justice. Doc. 4, ¶¶ 43–44. Plaintiff, a former employee of Cypress Bayou Casino, was elected Tribal Council Chairman of the Chitimacha Tribe of Louisiana in June 2015. *Id.* at ¶ 29. The Tribal Council Defendants served on the Tribal Counsel with plaintiff or after plaintiff was criminally charged. *Id.* at ¶¶ 17, 30.

The laws of the Chitimacha Tribe of Louisiana allegedly prohibit council members from working in the Casino or receiving any payments from the Casino. *Id.* at ¶ 36. After his election as Chairman, plaintiff allegedly received a bonus payment from the Casino for his former employment as a director, and the Council allegedly did not oppose the payment. *Id.* at ¶¶ 38–41. After the Tribal Gaming Commission received a complaint about "misappropriation of bonus monies," plaintiff and two others were criminally charged with felony theft, computer fraud, and obstruction of justice. *Id.* at ¶ 43. The Tribal Council Defendants pursued the charges with the Office of the District Attorney for the 16th Judicial District of Louisiana in St. Mary Parish. *Id.* at ¶ 44. Defendant Robert Vines[2] prosecuted the matter in his capacity as assistant district attorney. *Id.* Plaintiff alleges that defendants used the prosecution to oust him as Chairman of the Tribal Council and to pursue their own personal gains. *Id.* at ¶¶ 49–50.

This lawsuit was originally one of three filed by plaintiff, with suits filed in this court, state court (now removed to this court), and Chitimacha Tribal Court. Doc. 18, att. 4, p. 8. Defendants removed the state court action to this court, and the matter, also captioned *Darden v. Vines*, was assigned case number 6:22-cv-01398. The Tribal Council Defendants then filed the instant motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 18. After the Tribal Council Defendants filed motions to dismiss in both suits before this court, but before

---

[2] Robert Vines allegedly also serves as the Tribal Prosecutor for the Chitimacha Tribe of Louisiana. Doc. 4, ¶ 45.

opposition was due, the two suits were consolidated. Doc. 30. The opposition and reply filed in the lead case address the motions in both cases. Doc. 33, p. 17, n.7; doc. 36, p. 7, n.1.

## II.
## LAW AND ANALYSIS

### A. Legal Standard

#### 1. Rule 12(b)(1) Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020) (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)). For a Rule 12(b)(1) motion to dismiss, the "party asserting jurisdiction bears the burden of proof and must establish, by a preponderance of the evidence, that the court has jurisdiction." *Id.*

When filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because the court lacks subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

### *2. Tribal Sovereign Immunity*

The Chitimacha Tribe is one of four federally recognized Indian tribes in Louisiana. *See Brackeen v. Haaland*, 994 F.3d 249, 288 n.9 (5th Cir. 2021). "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 98 S.Ct. 1670, 1677 (1978) (*citing Turner v. United States*, 39 S.Ct. 109, 110 (1919)). Tribal sovereign immunity shields: (1) the tribe; (2) entities of the tribe that function as an "arm of the tribe;" and (3) "all tribal employees acting within their representative capacity and within the scope of their official authority." *Spivey v. Chitimacha Tribe of La.*, No. 6:21-2257, 2022 WL 558026, at *4 (W.D. La. Feb. 2, 2022). Tribal immunity is "a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 106 S.Ct. 2305, 2313 (1986).

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Manufacturing. Techs., Inc.*, 118 S.Ct. 1700, 1702 (1998). A waiver of sovereign immunity must be unequivocally expressed. *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2031 (2014).

### B. Analysis

In his Complaint, plaintiff names April Wyatt, Melissa Darden, John Paul Darden, Jacob Darden, Toby Darden, and Jacqueline Junca ("Tribal Council Defendants") as defendants in their individual capacities. Doc. 4, ¶¶ 10–15. Plaintiff claims that, during the events at issue in this matter, the Tribal Council Defendants "were acting outside the scope of Tribal Council authority." Doc. 4, ¶¶ 10–15. The Tribal Council Defendants disagree and argue that the relevant actions were official duties of the Tribal Council and that plaintiff's claims against them are barred by tribal sovereign immunity. Doc. 18, att. 4, pp. 14–22.

When determining whether the sovereign is the real party in interest and thus, whether sovereign immunity bars the suit, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis v. Clarke*, 137 S.Ct. 1285, 1290 (2017). Thus, we now determine whether the real party in interest is the individual defendants or the Tribal Council itself.

Plaintiff claims the Tribal Council Defendants acted outside the scope of their official authority and thus, that they, as individuals, are the real parties in interest. Doc. 33. However, the facts as pled by plaintiff indicate that the Tribal Council Defendants acted within the authority delineated by the Constitution and Bylaws of the Chitimacha Tribe of Louisiana ("Constitution and Bylaws") [doc. 18, att. 1] and the Tribal-State Compact for the Conduct of Class III Gaming Between the Chitimacha Tribe of Louisiana and the State of Louisiana ("the Compact") [doc. 18, att. 2].[3]

Plaintiff relies on *Lewis v. Clarke*, 137 S.Ct. 1285, to support his claim that the Tribal Council Defendants, not the Tribe, are the real parties in interest, thus precluding sovereign immunity. Doc. 33, p. 15. In that case, the defendant, an employee of the Mohegan Tribal Gaming Authority, was operating a vehicle within the scope of his employment when he caused a motor vehicle accident. *Lewis v. Clark*, 137 S.Ct. at 1291, 1289 (2017). In the instant matter, plaintiff is questioning the collective actions by the Tribal Council members (other than himself). Plaintiff alleges that the Tribal Council Defendants harmed him when they (1) referred the bonus payment investigation to the local District Attorney's office after the United States Attorney declined to

---

[3] A court may consider documents attached to a motion to dismiss if those documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (the court could properly consider insurance contracts attached to the 12(b)(6) motion when plaintiffs specifically referenced those policies, and they were central to the claim). Plaintiff refers to both the Constitution and Bylaws and the Compact in his Complaint. *See e.g.*, doc. 4, ¶¶ 62, 93–95. Furthermore, these documents are central to plaintiff's claims against the Tribal Council Defendants because those claims are premised on his assertion that the defendants acted outside the scope of the Tribal Council's authority.

pursue charges, (2) complied with the District Attorney's Office's preparation for and prosecution of plaintiff's criminal trial, (3) amended the Tribe's Constitution and Bylaws, and (4) reduced plaintiff's salary. Doc. 4.

The Tribe's Constitution and Bylaws empowers the Tribal Council to represent the Tribe's interests to the state. Doc. 18, att. 1, p. 8, art. VII, § 1(a).  Additionally, the state and the Tribe share concurrent criminal jurisdiction and investigatory authority over "all persons, including enrolled members of federally recognized Indian Tribes, who commit offenses made criminal by the laws of the United States of America or the State of Louisiana, on or within that portion of the Indian gaming lands that are described in Appendix A of this Compact." Doc. 18, att. 2, pp. 10–11, § 4(A).  "Nothing herein shall prevent the Tribe from initiating and conducting independent investigations and enforcement actions." Doc. 18, att. 2, p. 31, § 9(H).  However, when the subject of the investigation is an enrolled member of the Tribe, the federal government gets first choice in whether to prosecute the matter. Doc. 18, att. 2, pp. 10–11, § 4(A).

"In the event the federal authorities decline to prosecute the matter, the Tribe may prosecute the matter within its Criminal Justice system, or refer the matter for State prosecution, or make an appropriate disposition that serves the interest of justice and respects the rights of any victim of such wrongdoing." *Id.*  Thus, when the United States Attorney declined to pursue charges against plaintiff, the Tribe had the authority to further the matter's prosecution.  The Tribal Council represents the Tribe's interests to the state. Doc. 18, att. 1, p. 8, art. VII, § 1(a).  Thus, when the Tribal Council Defendants referred the matter to the local District Attorney's Office for prosecution, they were acting within their authority to represent the Tribe's interests to the state and within the Tribe's authority to refer the matter for prosecution.

Plaintiff acknowledges that the Tribal Council Defendants had the authority to make this referral [doc. 4, ¶ 65] but claims the resolution asserting such authority was *ultra vires*. Doc. 4, ¶ 66.  To successfully assert the *ultra vires* exception to sovereign immunity, the "complaint must allege facts sufficient to establish that the official was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 104 S.Ct. 900, 908 n.11 (1984)).  Here, plaintiff acknowledges that the Tribal Council Defendants had the authority to refer the matter to the Office of the District Attorney and fails to show they lacked a colorable basis to exercise that authority.  Thus, plaintiff's bare assertion that the resolution was *ultra vires* is unsupported.  Because the Tribal Council Defendants acted within their authority and on behalf of the Tribe when referring the charges against plaintiff to the Office of the District Attorney, plaintiff's claims against the Tribal Council Defendants for these acts are official capacity claims.

Plaintiff further takes issue with the Tribal Council Defendants' assistance to the District Attorney's Office in investigating and handling plaintiff's criminal prosecution. *See e.g.*, doc. 4, ¶¶ 53; 73.  Plaintiff asserts that the Tribal Council Defendants "initiated and continued the wrongful investigation (and then prosecution) of Plaintiff for acts that he did not commit . . . ." However, plaintiff also admits that he received a direct deposit bonus payment from the Casino [doc. 4, ¶ 40] and that Tribal law prohibits Tribal Council members from receiving payments from said Casino. Doc. 4, ¶ 36.  Plaintiff also claims that the Tribal Council Defendants acted outside their authority when they consulted with, received advice from, and/or advised the assistant district attorney about his investigation into the charges against plaintiff. Doc. 4, ¶ 73.  Additionally, plaintiff claims defendant Melissa Darden went beyond her authority and privately met with the

assistant district attorney during plaintiff's criminal trial to advise him about the case. Doc. 4, ¶ 90.

These actions fall within the Tribe's criminal jurisdiction and investigatory authority, which it concurrently shares with the State. Doc. 18, att. 2, pp. 10–11, § 4(A). Pursuant to its criminal jurisdiction, the Tribe has the authority to serve "the interest of justice and respect[] the rights of any victim of such wrongdoing." Doc. 18, att. 2, pp. 10–11, § 4(A). Furthermore, during the criminal investigation and trial, the Tribe was the alleged victim. Tasked with representing the Tribe's interests to the state [doc. 18, att. 1, p. 8, art. VII, § 1(a)] and respecting "the rights of any victim" (including the Tribe), the Tribal Council Defendants' assistance to and cooperation with the assistant district attorney's investigation and prosecution were official acts on behalf of the Tribe. Because these acts were within the scope of the Tribal Council's authority, the Tribal Council Defendants are entitled to sovereign immunity for plaintiff's claims based on these acts.

Plaintiff also claims the Tribal Council Defendants sought to amend the Tribe's Constitution and Bylaws to improperly divest or impair his rights. Doc. 4, ¶ 95. Plaintiff asserts that the amendment "constitutes acts that were malicious, intentional, willful, outrageous, reckless and/or flagrant." Doc. 4, ¶ 95. According to the Tribe's Constitution and Bylaws, the Constitution and Bylaws "may be amended **by a majority of the registered voters of the Chitimacha Tribe** . . . voting in an election authorized for that purpose by the tribal council, provided that at least thirty percent (30%) of those registered to vote shall cast ballots in such election." Doc. 18, att. 1, p. 9, art. X, § 1 (emphasis added). Thus, the Tribal Council Defendants could not amend the Tribe's Constitution and Bylaws on their own: such amendment requires a majority vote from the Tribe's members. Therefore, plaintiff's claims grounded in the amendment to the Tribe's

Constitution and Bylaws are really against the Tribe, not the Tribal Council Defendants, and as such, are barred by sovereign immunity.

Finally, plaintiff alleges that the Tribal Council Defendants reduced his salary as Chairman of the Tribal Council via *ultra vires* resolution. Doc. 4, ¶ 96. To support this claim, plaintiff's "complaint must allege facts sufficient to establish that the official was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 104 S.Ct. 900, 908 n.11 (1984)). Plaintiff admits he took a "voluntary leave of absence" from his elected position in February 2016 and received his full salary until January 2017. Doc. 4, ¶ 98. At that time, the Tribal Council Defendants allegedly "significantly reduced" plaintiff's Chairman salary. Doc. 4, ¶ 96. Plaintiff asserts that he had "a legitimate expectation in continued compensation" for the duration of his term as Chairman. Doc. 4, ¶ 98. According to plaintiff, there was no basis in Chitimacha law for the reduction of his salary, and thus, the Tribal Council Defendants' actions were *ultra vires*. Doc. 33, p. 23. However, Article VII, § 1(f) of the Constitution and Bylaws gives the Tribal Council the power to "appropriate any available tribal funds for the benefit of the tribe." Doc. 18, att. 1, p. 8, art. VII, § 1(f). This provision is at least a colorable basis for the Tribal Council Defendants' decision to reduce plaintiff's salary after plaintiff took an eleven-month voluntary leave of absence. Thus, reducing plaintiff's salary was not an *ultra vires* act that bars sovereign immunity.

Unlike the defendant *Lewis v. Clarke*, the Tribal Council Defendants in the present matter were members of the Tribe's governing body acting within their authority as the Tribe's representatives to the state. To rule on the propriety of the Tribal Council Defendants' decisions to pursue investigation and trial of plaintiff's actions, to cooperate and coordinate with the state

during the investigation and prosecution, to allow amendments to Tribal law, and to reduce plaintiff's salary would be to "circumvent tribal sovereign immunity" and pass judgment on tribal governance decisions. *See Lewis*, 137 S.Ct. at 1291. Therefore, the Tribal Council, not the Tribal Council Defendants individually, is the real party in interest. Because the Tribal Council, an arm of the Tribe, is the real party in interest in this suit, the claims against the Tribal Council Defendants are barred by sovereign immunity. *Id.* at 1290.

## III.
### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that the Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 18] be **GRANTED IN PART**. The Motion to Dismiss for Lack of Subject Matter Jurisdiction should be **GRANTED**, and all claims against defendants April Wyatt, Melissa Darden, John Paul Darden, Jacob Darden, Toby Darden, and Jacqueline Junca should be **DISMISSED WITHOUT PREJUDICE**. We make no finding as to defendants' arguments that the Complaint [doc. 4] fails to state a claim.

**IT IS FURTHER RECOMMENDED** that the identical Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in the member case [6:22-cv-01398, doc. 16] be **GRANTED IN PART**. The Motion to Dismiss for Lack of Subject Matter Jurisdiction should be **GRANTED**, and all claims against defendants April Wyatt, Melissa Darden, John Paul Darden, Jacob Darden, Toby Darden, and Jacqueline Junca should be **DISMISSED WITHOUT PREJUDICE**. We make no finding as to defendants' arguments that the Petition [6:22-cv-01398, doc. 1, att. 1] fails to state a claim.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections

within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n,* 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      THUS DONE AND SIGNED in Chambers this 1st day of March, 2023.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE